ORIGINAL
FILED

COPY

MAT 18 PH 1:45

RK, U.S. DISTRICT COURT
HERN DISTRICT OF CALIFORNIA

E-filing

1  BORNSTEIN & BORNSTEIN
2  Jonathan Herschel Bornstein (SBN 163392)
   2590 Geary Boulevard
3  San Francisco, CA 94115-3318
   Telephone:    (415) 409-7611
4  Facsimile:    (415) 409-9345

5
   DANZIGER SHAPIRO & LEAVITT, PC
6  Douglas M. Leavitt
7  150 S. Independence Mall West, Suite 1050
   Sixth and Chestnut Streets
8  Philadelphia, PA 19106
   Telephone: (215) 545-4830
9  Facsimile: (215) 545-6710

10
   Attorneys for Plaintiff

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                    - SAN FRANCISCO DIVISION -

14

15
   DAVID EISENBERG, Derivatively on Behalf of )   Case Number: _____ MMC
16 Nominal  Defendant  LINEAR  TECHNOLOGY )
   CORPORATION,                            )
17                                         )
                                           )        **SHAREHOLDER        DERIVATIVE**
18          Plaintiff,                     )        **COMPLAINT.**
                                           )
19      v.                                 )
                                           )
20                                         )
   PAUL COGHLAN, CLIVE B. DAVIES, ROBERT )
21 C. DOBKIN, DAVID S. LEE, LOTHAR MAIER, )
   LEO T. MCCARTHY, RICHARD M. MOLEY, )
22 ROBERT H. SWANSON, JR., and THOMAS S. )
   VOLPE,                                  )
23                                         )
                                           )
24          Defendants,                    )
                                           )        **JURY TRIAL DEMANDED**
25                                         )
        and                                )
26                                         )
   LINEAR TECHNOLOGY CORPORATION,          )
27                                         )
                                           )
28          Nominal Defendant.             )
                                           )
29 _____)

-1-

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder's derivative action brought for the benefit of nominal defendant Linear Technology Corporation ("Linear" or the "Company") against the members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law.

2.      In gross breach of their fiduciary duties as officers and/or directors of Linear, the Individual Defendants (as defined herein) colluded with one another to:

  a. improperly backdate dozens of grants of Linear stock options to Linear Chairman and former Chief Executive Officer Robert Swanson and several other Linear executives, in violation of the Company's shareholder-approved stock option plans;

  b. improperly record and account for the backdated stock options, in violation of Generally Accepted Accounting Principles;

  c. improperly take tax deductions based on the backdated stock options, in violation of Section 162(m) of the Tax Code;

  d. produce and disseminate to Linear shareholders and the market false financial statements and other SEC filings that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options.

3.      As a result of the Individual Defendants' egregious misconduct, Linear has sustained millions of dollars in damages, and Swanson and the other recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

-2-

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

5.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

6.     Plaintiff David Eisenberg, a citizen of the State of New York, is, and was at all relevant times, a shareholder of nominal defendant Linear.

7.     Nominal defendant Linear is a Delaware corporation with its principal executive offices located at1630 McCarthy Boulevard, Milpitas, California 95035.  According to its public filings, Linear designs, manufactures and markets a broad line of standard high performance linear integrated circuits.

8.     Defendant Robert H. Swanson, Jr. ("Swanson"), a founder of the Company, has served as Executive Chairman of the Board since January 2005.  Swanson previously served as President, Chief Executive Officer, and a director of Linear from 1981 to April 1999, and as Chairman of the Board and

Chief Executive Officer of the Company from April 1999 to January 2005.  Upon information and belief, Swanson is a citizen of the State of California.

9.      Defendant Lothar Maier ("Maier") has served as a director of Linear and as Chief Executive Officer of the Company since January 2005.  Maier previously served as Chief Operating Officer of the Company from 2000 to January 2005.  Upon information and belief, Maier is a citizen of the State of California

10.      Defendant Paul Coghlan ("Coghlan") has served as Vice President of Finance and Chief Financial Officer of Linear at all times relevant hereto.  Upon information and belief, Coughlin is a citizen of the State of California.

11.      Defendant Clive B. Davies ("Davies") served as Vice President and Chief Operating Officer of Linear from 1995 to 1999 and as President of Linear from 1999 to 2003.  Upon information and belief, Davies is a citizen of the State of California.

12.      Defendant Robert C. Dobkin ("Dobkin") served as Vice President of Engineering of Linear at all times relevant hereto.  Upon information and belief, Dobkin is a citizen of the State of California.

13.      Collectively, defendants Swanson, Maier, Coghlan, Davies, and Dobkin are referred to herein as the "Officer Defendants."

14.      Defendant David S. Lee ("Lee") has served as a director of Linear and as a member of both the Compensation Committee of the Board (the "Compensation Committee") and the Audit Committee of the Board (the "Audit Committee") at all times relevant hereto.  Upon information and belief, Lee is a citizen of the State of California.

-4-

15.     Defendant Leo T. McCarthy ("McCarthy") has served as a director of Linear and as a member of both the Compensation Committee and the Audit Committee at all times relevant hereto. Upon information and belief, McCarthy is a citizen of the State of California.

16.     Defendant Richard M. Moley ("Moley") has served as a director of Linear and as a member of both the Compensation Committee and the Audit Committee at all times relevant hereto. Upon information and belief, Moley is a citizen of the State of California.

17.     Defendant Thomas S. Volpe ("Volpe") has served as a director of Linear and as a member of both the Compensation Committee and the Audit Committee at all times relevant hereto. Upon information and belief, Volpe is a citizen of the State of California.

18.     Collectively, defendants Lee, McCarthy, Moley, and Volpe are referred to herein as the "Committee Defendants."

19.     Collectively, the Officer Defendants and Committee Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

20.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.     The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.     Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and

diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

21. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

22. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a. exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c. exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company; and

d. exercise good faith in ensuring that the Company's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); and

e. refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

-6-

23. The Individual Defendants were responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were required to:

    (1)    make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

    (2)    devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

        (a)    transactions are executed in accordance with management's general or specific authorization;

        (b)    transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

24. Linear's Audit Committee Charter provides that the Audit Committee shall be responsible for, among other things,

    a.    Reviewing the results of the quarterly review and the committee, or its chairman, shall review the interim financial statements prior to the filing of the Company's quarterly report on Form 10-Q;

    b.    Reviewing with management and the independent auditors the financial statements to be included in the Company's Annual Report on Form 10-K; and

    c.    Overseeing the adequacy of the corporation's system of internal accounting controls, including obtaining from the independent auditors their management letters or summaries on such internal accounting controls.

# FACTUAL ALLEGATIONS

## Stock Option Grants to the Officer Defendants

25. At all times relevant hereto the Compensation Committee determined the salaries and incentive compensation for executive officers of Linear and administered the Company's stock option plans.

26. From 1995 to 2002, the Compensation Committee granted certain Linear stock options to the Officer Defendants, as follows:[1]

| Officer | Purported Date of Grant | Exercise Price | Number of Options |
|---------|-------------------------|----------------|-------------------|
| Swanson | 7/25/95 | $34.125 | 200,000 |
|         | 7/23/96 | $24.75 | 200,000 |
|         | 1/12/98 | $51.875 | 125,000 |
|         | 4/13/99 | $56.3125 | 100,000 |
|         | 7/28/00 | $50.25 | 200,000 |
|         | 4/17/01 | $38.25 | 500,000 |
|         | 7/26/02 | $25.05 | 381,400 |
| Coghlan | 7/25/95 | $34.125 | 70,000 |
|         | 7/23/96 | $24.75 | 70,000 |
|         | 1/12/98 | $51.875 | 45,000 |
|         | 4/13/99 | $56.3125 | 35,000 |
|         | 7/28/00 | $50.25 | 70,000 |
|         | 4/17/01 | $38.25 | 75,000 |
|         | 7/26/02 | $25.05 | 146,690 |
| Maier | 7/28/00 | $50.25 | 45,000 |
|       | 4/17/01 | $38.25 | 30,000 |
|       | 7/26/02 | $25.05 | 100,060 |

[1] Exercise prices and numbers of options are not adjusted for the Company's 2-for-1 stock splits effective September 1, 1995, February 22, 1999, and March 28, 2000.

| | | | |
|---|---|---|---|
| Davies | 7/25/95 | $34.125 | 100,000 |
| | 7/23/96 | $24.75 | 100,000 |
| | 1/12/98 | $51.875 | 65,000 |
| | 4/13/99 | $56.3125 | 65,000 |
| | 7/28/00 | $50.25 | 120,000 |
| | 4/17/01 | $38.25 | 75,000 |
| | 7/26/02 | $25.05 | 186,200 |
| | | | |
| Dobkin | 7/25/95 | $34.125 | 150,000 |
| | 7/23/96 | $24.75 | 150,000 |
| | 1/12/98 | $51.875 | 95,000 |
| | 4/13/99 | $56.3125 | 45,000 |
| | 7/28/00 | $50.25 | 75,000 |
| | 4/17/01 | $38.25 | 70,000 |

27. Pursuant to the terms of the Company's shareholder-approved stock option plans, the exercise price of options must be no less than the closing bid price of Linear stock on the last trading day before the day of grant.

28. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

29. Pursuant to Section 162(m) of the Tax Code, 26 U.S.C. § 162(m) ("Section 162(m)"), compensation in excess of $1 million per year, including gains on stock options, paid to a corporation's five most highly-compensated officers is tax deductible only if: (i) the compensation is payable solely on account of the attainment of one or more performance goals; (ii) the performance goals are determined by a compensation committee comprised solely of two or more outside directors, (iii) the material terms under which the compensation is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of the compensation, and (iv) before any payment of such compensation, the compensation committee certifies that the performance goals and any other material terms were in fact satisfied.

-9-

30.     In a striking pattern that could not have been the result of chance, each and every one of the foregoing stock option grants was dated just after a sharp drop and just before a substantial rise in Linear's stock price, as demonstrated in the following charts:

   a.     Summary of Option Grants and Surrounding Stock Price Performance

| Purported Date of Grant | Exercise Price | Stock Price 10 Trading Days Before Grant | Stock Price 10 Trading Days After Grant | % Rise in Stock Price After Grant |
|---|---|---|---|---|
| 7/25/95 | $34.125 | $33.625 | $38.70 | 13.4% |
| 7/23/96 | $24.75 | $27.00 | $32.25 | 30.3% |
| 1/12/98 | $51.875 | $53.69 | $62.00 | 19.5% |
| 4/13/99 | $56.3125 | $53.25 | $56.8125 | 1% |
| 7/28/00 | $50.25 | $69.875 | $61.6875 | 22.8% |
| 4/17/01 | $38.25 | $37.4375 | $50.08 | 30.9% |
| 7/26/02 | $25.05 | $30.07 | $27.46 | 9.6% |

   b.     Stock Price Performance Surrounding Option Granted Dated 7/25/95



7/11/95: Stock closes at $33.625
7/25/95: Options granted at $34.125
8/8/95: Stock closes at $38.70

   c.     Stock Price Performance Surrounding Option Granted Dated 7/23/96



7/9/96: Stock closes at $27.00
7/23/96: Options granted at $24.75
8/6/96: Stock closes at $32.25

d.    Stock Price Performance Surrounding Option Granted Dated 1/12/98



12/26/97: Stock closes at $53.6875

1/12/98: Options granted at $51.875

1/27/98: Stock closes at $62.00

e.    Stock Price Performance Surrounding Option Granted Dated 4/13/99



3/29/99: Stock closes at $53.25

4/13/99: Options granted at $56.3125

4/26/99: Stock closes at $56.8125

f.    Stock Price Performance Surrounding Option Granted Dated 7/28/00



7/14/00: Stock closes at $69.875

7/28/00: Options granted at $50.25

8/11/00: Stock closes at $61.875

g.    Stock Price Performance Surrounding Option Granted Dated 4/17/01



4/2/01: Stock closes at $37.4375

4/17/01: Options granted at $38.25

5/1/01: Stock closes at $50.08

-11-

1    h.    Stock Price Performance Surrounding Option Granted Dated 7/26/02



7/12/02: Stock closes at $30.07

7/26/02: Options granted at $25.05

8/9/02: Stock closes at $27.46

31.    The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Officer Defendants, the Committee Defendants improperly backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Linear stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's shareholder-approved stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Officer Defendants and improperly reduced the amounts the Officer Defendants had to pay the Company upon exercise of the options.

**Dissemination of False Financial Statements**

32.    As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants,

a.    violated the terms of the Company's shareholder-approved stock option plans;

b.    violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

-12-

c. violated Section 162(m) by taking tax deductions based on stock option grants that were not payable solely on account of the attainment of one or more performance goals and violated the terms of the Company's shareholder-approved stock option plans; and

d. produced and disseminated to Linear shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

33. The Company, with the knowledge, approval, and participation of each of the Individual Defendants, disseminated its false financial statements in, *inter alia*, the following Form 10-K filings:

a. Form 10-K for fiscal year ended June 30, 1996, filed with the SEC on September 27, 1996 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe;

b. Form 10-K for fiscal year ended June 29, 1997, filed with the SEC on September 26, 1997 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe;

c. Form 10-K for fiscal year ended June 28, 1998, filed with the SEC on September 25, 1998 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe;

d. Form 10-K for fiscal year ended June 27, 1999, filed with the SEC on September 24, 1999 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe;

e. Form 10-K for fiscal year ended July 2, 2000, filed with the SEC on September 29, 2000 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe;

f. Form 10-K for fiscal year ended July 1, 2001, filed with the SEC on September 21, 2001 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe;

g. Form 10-K for fiscal year ended June 30, 2002, filed with the SEC on September 18, 2002 and signed by defendants Swanson, Coghlan, Lee, McCarthy, Moley, and Volpe.

34. Furthermore, from 1995 to 2005, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating:

    a.    disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants; and

    b.    filed with the SEC Form 4 filings that falsely reported the dates of stock option grants to the Officer Defendants.

35. On March 18, 2006, *The Wall Street Journal* published an article under the headline "The Perfect Payday" that described similar stock option backdating practices by other companies, including Affiliated Computer Services, Inc. ("ACS"), Linear Group, Inc. ("Linear"), Comverse Technology, Inc. ("Comverse"), and Vitesse Semiconductor Corporation ("Vitesse"). With regard to ACS and its former Chief Executive Officer Jeffrey Rich, the *Journal* reported:

> On a summer day in 2002, shares of Affiliated Computer Services Inc. sank to their lowest level in a year. Oddly, that was good news for Chief Executive Jeffrey Rich.
>
> His annual grant of stock options was dated that day, entitling him to buy stock at that price for years. Had they been dated a week later, when the stock was 27% higher, they'd have been far less rewarding. It was the same through much of Mr. Rich's tenure: In a striking pattern, all six of his stock-option grants from 1995 to 2002 were dated just before a rise in the stock price, often at the bottom of a steep drop.
>
> Just lucky? A Wall Street Journal analysis suggests the odds of this happening by chance are extraordinarily remote -- around one in 300 billion. The odds of winning the multistate Powerball lottery with a $1 ticket are one in 146 million.
>
> Suspecting such patterns aren't due to chance, the Securities and Exchange Commission is examining whether some options carry favorable grant dates for a different reason: They were backdated.

36. The odds that the pattern of fortuitously-timed stock option grants exhibited by Linear is the result of chance are similar to, if not greater than, the one in several billion or more odds described

-14-

by the *Wall Street Journal*.  The actual reason for the extraordinary pattern exhibited by Linear was that the Officer Defendants' stock options were improperly backdated, as alleged herein.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

37.   The Officer Defendants breached their fiduciary duties by:

    a.    colluding with the Committee Defendants to backdate stock option grants;

    b.    colluding with the Committee Defendants to violate GAAP and Section 162(m);

    c.    colluding with the Committee Defendants to produce and disseminate to Linear shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

38.   The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

39.   The Committee Defendants breached their fiduciary duties by:

    a.    colluding with the Officer Defendants to backdate stock option grants;

    b.    colluding with the Officer Defendants to violate GAAP and Section 162(m);

    c.    colluding with the Officer Defendants to produce and disseminate to Linear shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

40.     The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

41.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

42.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties and unjust enrichment.

43.     Plaintiff is an owner of Linear common stock and was an owner of Linear common stock at all times relevant hereto.

44.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

45.     As a result of the facts set forth herein, plaintiff has not made any demand on the Linear Board of Directors to institute this action against the Individual Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

46.     The Board currently consists of six directors: defendants Swanson, Maier, Lee, McCarthy, Moley, and Volpe.   The following directors are incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action:

-16-

a.   Swanson and Maier, because they are directly interested in the improperly backdated stock option grants complained of herein;

b.   Lee, McCarthy, Moley, and Volpe, because as members of the Compensation Committee and the Audit Committee, they directly participated in and approved the misconduct alleged herein and are substantially likely to be held liable for breaching their fiduciary duties, as alleged herein. Moreover, by colluding with the Officer Defendants, as alleged herein, Lee, McCarthy, Moley, and Volpe have demonstrated that they are unable or unwilling to act independently of the Officer Defendants.

47.   Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

## AGAINST THE INDIVIDUAL DEFENDANTS FOR
## BREACH OF FIDUCIARY DUTY

48.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

49.   As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

50.   As alleged in detail herein, the Officer Defendants breached their fiduciary duties by:

a.   colluding with the Committee Defendants to backdate stock option grants;

b.   colluding with the Committee Defendants to violate GAAP and Section 162(m);

c.   colluding with the Committee Defendants to produce and disseminate to Linear shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

d.   colluding with the Committee Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

-17-

51.   The Officer Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

52.   The Committee Defendants breached their fiduciary duties by:

     a.   colluding with the Officer Defendants to backdate stock option grants;

     b.   colluding with the Officer Defendants to violate GAAP and Section 162(m);

     c.   colluding with the Officer Defendants to produce and disseminate to Linear shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

     d.   colluding with the Officer Defendants to file false proxy statements and false Form 4 filings in order to conceal the improper backdating of stock options.

53.   The Committee Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit the Officer Defendants at the expense of the Company.

54.   As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

**COUNT II**

**AGAINST THE INDIVIDUAL DEFENDANTS
FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES
EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER**

55.   Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

Shareholder Derivative Complaint

56.     Each of the Individual Defendants intentionally or recklessly employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Company.

57.     The Company relied upon the Individual Defendants' fraud in granting the Officer Defendants options to purchase shares of Linear common stock.

58.     As a direct and proximate result of the Individual Defendants' fraud the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

### COUNT III

### AGAINST THE OFFICER DEFENDANTS
### FOR UNJUST ENRICHMENT

59.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

60.     The Officer Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

61.     To remedy the Officer Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

WHEREFORE, Plaintiff demands judgment as follows:

A.      Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and statutory violations;

-19-

B. Ordering the Officer Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

C. Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

D. Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

Dated: 5/18/06                          Respectfully submitted,

                                        BORNSTEIN & BORNSTEIN

                                        Jonathan Herschel Bornstein (SBN 163392)
                                        Kathryn Querel (SBN 167100)
                                        2590 Geary Boulevard
                                        San Francisco, CA  94115-3318
                                        Telephone: (415) 409-7611
                                        Facsimile: (415) 409-9345

                                        DANZIGER SHAPIRO & LEAVITT, PC
                                        Douglas M. Leavitt
                                        150 S. Independence Mall West, Suite 1050
                                        Sixth and Chestnut Streets
                                        Philadelphia, PA 19106
                                        Telephone: (215) 545-4830
                                        Facsimile: (215) 545-6710

                                        *Attorneys for Plaintiff*

-20-

Shareholder Derivative Complaint

## **VERIFICATION**

I, David Eisenberg, hereby verify that I have reviewed the Complaint and authorized its filing and that the foregoing is true and correct to the best of my knowledge, information and belief.

DATE: _____5/2/06_____                    _____*signature*_____

**DAVID EISENBERG**